# UNITED STATES DISTRICT COURT

for the

Central District of California

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No. 5:20-MJ-00174 |
| | ) | |
| iPhone, Model 8-Plus, Serial no. DX5X67BTJCM2 | ) ) ) ) | |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

*See Attachment A*

located in the Central District of California, there is now concealed *(identify the person or describe the property to be seized)*:

*See Attachment B*

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☒ evidence of a crime;

☒ contraband, fruits of crime, or other items illegally possessed;

☒ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1); 843(b); 846 18 U.S.C. §§ 922(g); and 924(c) | |

The application is based on these facts:

*See attached Affidavit*

☒ Continued on the attached sheet.

☐ Delayed notice of _____ days (*give exact ending date if more than 30 days*:_____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Joseph Nazareno
_____
*Applicant's signature*

Joseph Nazareno, Special Agent
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: _____

_____
*Judge's signature*

City and state: <u>Riverside, CA</u>

Honorable Sheri Pym, Magistrate Judge
_____
*Printed name and title*

AUSA: Peter Dahlquist:276-6267

## AFFIDAVIT

I, JOSEPH NAZARENO, being duly sworn, declare and state as follows:

## I. PURPOSE OF AFFIDAVIT

1.  This affidavit is made in support of an application for a warrant to search one (1) digital forensic clone of an iPhone, Model 8-Plus, Serial no. DX5X67BTJCM2, with name "iPhone sal goza," belonging to SALVADOR GONZALEZ ("SUBJECT DEVICE"), in the custody of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") Riverside Field Office in Riverside, California, as described more fully in Attachment A.

2.  The requested search warrant seeks authorization to seize evidence, fruits, or instrumentalities of violations of 21 U.S.C. §§ 841(a)(1) (possession with intent to distribute controlled substances), 843(b) (unlawful use of a communication facility to commit or facilitate felony drug offense), and 846 (conspiracy and attempt to distribute controlled substances) and 18 U.S.C. §§ 922(g) (prohibited person in possession of a firearm) and 924(c) (possession of a firearm in furtherance of a drug trafficking crime) (the "Subject Offenses"), as described more fully in Attachment B.  Attachments A and B are incorporated herein by reference.

3.  The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested search warrant,

and does not purport to set forth all of my knowledge of or investigation into this matter.  Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## II. PREVIOUS SEARCH WARRANT APPLICATION

4.   On November 27, 2019, the Honorable Shashi H. Kewalramani, United States Magistrate Judge, Central District of California, issued a search warrant for multiple devices, including the SUBJECT DEVICE, Case No. 5:19-MJ-00633.  That warrant, with the accompanying signed affidavit is attached as Exhibit 1.

## III. ADDITIONAL INFORMATION SINCE PRIOR SEARCH WARRANT APPLICATION

5.   After the issuance of search warrant for the SUBJECT DEVICE, Case No. 5:19-MJ-00633, on November 27, 2019, I searched the SUBJECT DEVICE and seized data consistent with the parameters of the warrant.  During my review of the data on the SUBJECT DEVICE, I observed photographs of individuals brandishing firearms.  Among the photographs was a picture of GONZALEZ holding an AR-type rifle.  I also saw a picture depicting handguns on display next to a Pittsburg Pirates baseball hat.  Perres Maravilla (PMV) criminal street gang members wear Pittsburg Pirates logos to denote association and membership with PMV.

6.   GONZALEZ is a convicted felon.  I have reviewed criminal history report for GONZALEZ and learned that GONZALEZ

has previously been convicted of the following felony crimes punishable by a term of imprisonment exceeding one year:

a.    On or about January 23, 2009, a violation of California Penal Code Section 496D(a), to wit: Possession of a Stolen Vehicle/Vessel/Etc., in the Superior Court for the State of California, County of San Bernardino, Case Number FVA027026; and

b.    On or about January 23, 2009, a violation of California Penal Code Section 192(a), to wit: Voluntary Manslaughter, in the Superior Court for the State of California, County of San Bernardino, Case Number FVA027501.

## IV. TRAINING AND EXPERIENCE ON DIGITAL DEVICES

7.    As used herein, the term "digital device" includes the SUBJECT DEVICE.

8.    Based on my training, experience, and information from those involved in the forensic examination of digital devices, I know that the following electronic evidence, inter alia, is often retrievable from digital devices:

a.    Forensic methods may uncover electronic files or remnants of such files months or even years after the files have been downloaded, deleted, or viewed via the Internet.  Normally, when a person deletes a file on a computer, the data contained in the file does not disappear; rather, the data remain on the hard drive until overwritten by new data, which may only occur after a long period of time.  Similarly, files viewed on the Internet are often automatically downloaded into a temporary directory or cache that are only overwritten as they are

replaced with more recently downloaded or viewed content and may also be recoverable months or years later.

b.    Digital devices often contain electronic evidence related to a crime, the device's user, or the existence of evidence in other locations, such as, how the device has been used, what it has been used for, who has used it, and who has been responsible for creating or maintaining records, documents, programs, applications, and materials on the device.  That evidence is often stored in logs and other artifacts that are not kept in places where the user stores files, and in places where the user may be unaware of them.  For example, recoverable data can include evidence of deleted or edited files; recently used tasks and processes; online nicknames and passwords in the form of configuration data stored by browser, e-mail, and chat programs; attachment of other devices; times the device was in use; and file creation dates and sequence.

c.    The absence of data on a digital device may be evidence of how the device was used, what it was used for, and who used it.  For example, showing the absence of certain software on a device may be necessary to rebut a claim that the device was being controlled remotely by such software.

d.    Digital device users can also attempt to conceal data by using encryption, steganography, or by using misleading filenames and extensions.  Digital devices may also contain "booby traps" that destroy or alter data if certain procedures are not scrupulously followed.  Law enforcement continuously

develops and acquires new methods of decryption, even for devices or data that cannot currently be decrypted.

9.     Based on my training, experience, and information from those involved in the forensic examination of digital devices, I know that it is not always possible to search devices for data during a search of the premises for a number of reasons, including the following:

a.     Digital data are particularly vulnerable to inadvertent or intentional modification or destruction.  Thus, often a controlled environment with specially trained personnel may be necessary to maintain the integrity of and to conduct a complete and accurate analysis of data on digital devices, which may take substantial time, particularly as to the categories of electronic evidence referenced above.

b.     Digital devices capable of storing multiple gigabytes are now commonplace.  As an example of the amount of data this equates to, one gigabyte can store close to 19,000 average file size (300kb) Word documents, or 614 photos with an average size of 1.5MB.

10.     Other than what has been described herein, to my knowledge, the United States has not attempted to obtain this data by other means.

///

///

## V. <u>CONCLUSION</u>

11.  For all of the reasons described above and further based on the information in Exhibit 1 attached to this application, there is probable cause that the items to be seized described in Attachment B will be found in a search of the SUBJECT DEVICE described in Attachment A.

 

 

JOSEPH NAZARENO,
Special Agent
Bureau of Alcohol, Tobacco,
Firearms and Explosives


Subscribed to and sworn before me
this _____ day of March, 2020.

 

_____
UNITED STATES MAGISTRATE JUDGE

**ATTACHMENT A**

<u>PROPERTY TO BE SEARCHED</u>

One (1) digital forensic clone of an iPhone, Model 8-Plus, Serial no. DX5X67BTJCM2, with name "iPhone sal goza" ("SUBJECT DEVICE").

The SUBJECT DEVICE is currently in the custody of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") Riverside Field Office in Riverside, California.

**ATTACHMENT B**

**I.   ITEMS TO BE SEIZED**

1.   The items to be seized are evidence, contraband, fruits, or instrumentalities of violations of 21 U.S.C. §§ 841(a)(1) (Possession with Intent to Distribute Controlled Substances), 843(b) (Unlawful Use of a Communication Facility to Commit or Facilitate Felony Drug Offense), and 846 (Conspiracy and Attempt to Distribute Controlled Substances) and 18 U.S.C. §§ 922(g) (Prohibited Person in Possession of a Firearm) and 924(c) (Possession of a Firearm in Furtherance of a Drug Trafficking Crime)(the "Subject Offenses"), namely:

     a.   Records, documents, programs, applications and materials, or evidence of the absence of same, sufficient to show call log information, including all telephone numbers dialed from any of the digital devices and all telephone numbers accessed through any push-to-talk functions, as well as all received or missed incoming calls;

     b.   Records, documents, programs, applications or materials, or evidence of the absence of same, sufficient to show SMS text, email communications or other text or written communications sent to or received from any of the digital devices and which relate to the above-named violations;

     c.   Records, documents, programs, applications or materials, or evidence of the absence of same, sufficient to show instant and social media messages (such as Facebook, Facebook Messenger, Snapchat, FaceTime, Skype, and WhatsApp), SMS text, email communications, or other text or written

communications sent to or received from any digital device and which relate to the above-named violations;

      d.   Audio recordings, pictures, video recordings, or still captured images related to the purchase, possession, sale, transportation, or distribution of cellular phones, firearms, or ammunition;

      e.   Documents, receipts, e-mails, instant and social media messages, related to the purchase, sale, possession, transportation, or distribution of drugs, firearms, or ammunition;

      f.   Contents of any calendar or date book;

      g.   Global Positioning System ("GPS") coordinates and other information or records identifying travel routes, destinations, origination points, and other locations from November 1, 2019 to November 30, 2019; and

      h.   Any SUBJECT DEVICE which is itself or which contains evidence, contraband, fruits, or instrumentalities of the Subject Offenses, and forensic copies thereof.

      i.   With respect to any SUBJECT DEVICE containing evidence falling within the scope of the foregoing categories of items to be seized:

         i.   evidence of who used, owned, or controlled the device at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, e-mail, e-mail contacts, chat and instant messaging logs, photographs, and correspondence;

        ii.  evidence of the presence or absence of software that would allow others to control the device, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

        iii. evidence of the attachment of other devices;

        iv.  evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the device;

        v.   evidence of the times the device was used;

        vi.  passwords, encryption keys, biometric keys, and other access devices that may be necessary to access the device;

        vii. applications, utility programs, compilers, interpreters, or other software, as well as documentation and manuals, that may be necessary to access the device or to conduct a forensic examination of it;

        viii.    records of or information about Internet Protocol addresses used by the device;

        ix.  records of or information about the device's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

    2.  As used herein, the terms "records," "documents," "programs," "applications," and "materials" include records, documents, programs, applications, and materials created,

modified, or stored in any form, including in digital form on any digital device and any forensic copies thereof.

II. **SEARCH PROCEDURE FOR DIGITAL DEVICE**

3.    In searching the SUBJECT DEVICE (or forensic copies thereof), law enforcement personnel executing this search warrant will employ the following procedure while the SUBJECT DEVICE is not connected to the Internet or a network (such as in "Airplane Mode"):

b.    Law enforcement personnel or other individuals assisting law enforcement personnel (the "search team") may search the SUBJECT DEVICE, which is capable of being used to facilitate the above-listed violations or contains data falling within the scope of the items to be seized.

c.    The search team will, in its discretion, either search the SUBJECT DEVICE where it is currently located or transport it to an appropriate law enforcement laboratory or similar facility to be searched at that location.

d.    The search team shall complete the search of the SUBJECT DEVICE as soon as is practicable, but not to exceed 120 days from the date of issuance of the warrant.  The government will not search the SUBJECT DEVICE beyond this 120-day period without obtaining an extension of time order from the Court.

e.    The search team will conduct the search only by using search protocols specifically chosen to identify only the specific items to be seized under this warrant.

i.    The search team may subject all of the data contained in the SUBJECT DEVICE, capable of containing any of

the items to be seized, to the search protocols to determine whether the SUBJECT DEVICE and any data thereon falls within the scope of the items to be seized.  The search team may also search for and attempt to recover deleted, "hidden," or encrypted data to determine, pursuant to the search protocols, whether the data falls within the scope of the items to be seized.

ii.  The search team may use tools to exclude normal operating system files and standard third-party software that do not need to be searched.

iii. The search team may use forensic examination and searching tools, such as "EnCase" and "FTK" (Forensic Tool Kit), which tools may use hashing and other sophisticated techniques.

f.   If the search team, while searching the SUBJECT DEVICE, encounters immediately apparent contraband or other evidence of a crime outside the scope of the items to be seized, the team shall immediately discontinue its search of that SUBJECT DEVICE pending further order of the Court and shall make and retain notes detailing how the contraband or other evidence of a crime was encountered, including how it was immediately apparent contraband or evidence of a crime.

g.   If the search determines that the SUBJECT DEVICE does not contain any data falling within the list of items to be seized, the government will, as soon as is practicable, return the SUBJECT DEVICE and delete or destroy all forensic copies thereof.

h.   If the search determines that a SUBJECT DEVICE does contain data falling within the list of items to be seized, the government may make and retain copies of such data, and may access such data at any time.

i.   If the search determines that the SUBJECT DEVICE is (1) itself an item to be seized and/or (2) contains data falling within the list of other items to be seized, the government may retain the digital device and any forensic copies of the digital device, but may not access data falling outside the scope of the other items to be seized (after the time for searching the device has expired) absent further court order.

j.   The government may also retain a SUBJECT DEVICE if the government, prior to the end of the search period, obtains an order from the Court authorizing retention of the device (or while an application for such an order is pending), including in circumstances where the government has not been able to fully search a device because the device or files contained therein is/are encrypted.

k.   After the completion of the search of the SUBJECT DEVICE, the government shall not access digital data falling outside the scope of the items to be seized absent further order of the Court.

2.   This warrant authorizes a review of electronic storage media seized, electronically stored information, communications, other records and information seized, copied or disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant.  The review of

this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the investigating agency may deliver a complete copy of the seized, copied, or disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

3.   The special procedures relating to digital devices found in this warrant govern only the search of digital devices pursuant to the authority conferred by this warrant and do not apply to any search of digital devices pursuant to any other court order.

Exhibit 1

ORIGINAL COPY

AO 93  (Rev. 12/09) Search and Seizure Warrant   (USAO CDCA Rev. 01/2013)

# UNITED STATES DISTRICT COURT
### for the
### Central District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>1) Silver Samsung, Model SM-J737P, IMEI no.<br>35425509950313; 2) Pink iPhone;<br>3) iPhone, Model 8-Plus, Serial no. DX5X67BTJCM2 | )<br>)<br>)<br>)  Case No.    5:19-MJ-00633<br>)<br>)<br>) |

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____CENTRAL_____   District of _____CALIFORNIA_____
*(identify the person or describe the property to be searched and give its location)*:

    See Attachment A

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:

    See Attachment B

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before    ___14 days from the date of its issuance___
                                                                                              *(not to exceed 14 days)*

☑ in the daytime  6:00 a.m. to 10 p.m.        ☐ at any time in the day or night as I find reasonable cause has been
                                                                           established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge on duty at the time of the return through a filing with the Clerk's Office.
                                                    *(name)*

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*   ☐ for _____ days *(not to exceed 30)*.

                                                    ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:    11/27/19 @ 12:06 pm          _____
                                                                                            *Judge's signature*

City and state:    Riverside, California _____          Hon. Shashi H. Kewalramani U.S. Magistrate Judge
                                                                                            *Printed name and title*

AUSA: Peter Dahlquist  276-6267/re

AO 93  (Rev. 12/09) Search and Seizure Warrant (Page 2)

| *Return* | | |
|---|---|---|
| Case No.:<br>  5:19-MJ-00633 | *Date and time warrant executed:* | *Copy of warrant and inventory left with:* |

*Inventory made in the presence of :*

*Inventory of the property taken and name of any person(s) seized:*
[Please provide a description that would be sufficient to demonstrate that the items seized fall within the items authorized to be seized pursuant to the warrant (e.g., type of documents, as opposed to "miscellaneous documents") as well as the approximate volume of any documents seized (e.g., number of boxes).  If reference is made to an attached description of property, specify the number of pages to the attachment and any case number appearing thereon.]

*Certification*  (by officer present during the execution of the warrant)

*I declare under penalty of perjury that I am an officer who executed this warrant and that this inventory is correct and was returned along with the original warrant to the designated judge through a filing with the Clerk's Office.*

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

**ATTACHMENT A**

PROPERTY TO BE SEARCHED

The following digital devices (the "SUBJECT DEVICES"),
seized on November 14, 2019, and currently maintained in the
custody of the Riverside County Sheriff's Office in Perris,
California:

1.   One (1) silver Samsung, Model SM-J737P, IMEI no.
35425509950313, with phone no. 951-581-4191; *(SARAI MENNIJE-VALDEZ)*

2.   One (1) iPhone, Model 8-Plus, Serial no. DX5X67BTJCM2,
with name "iPhone sal goza"; *(SALVADOR GONZALEZ)*

3.   One (1) pink iPhone with black "Apple" icon; T-Mobile
SIM Card no. 8901260182771498963. *(APRIL RODRIGUEZ)*

i

## ATTACHMENT B

I.   **ITEMS TO BE SEIZED**

1.   The items to be seized are evidence, contraband, fruits, or instrumentalities of violations of 21 U.S.C. §§ 841(a)(1) (possession with intent to distribute controlled substances), §846 (conspiracy and attempt to distribute controlled substances) and 843(b) (Use of Communication Facility to Commit a Felony Controlled Substance Offense) (the "Subject Offenses"), namely:

a.   Records, documents, programs, applications and materials, or evidence of the absence of same, sufficient to show call log information, including all telephone numbers dialed from any of the digital devices and all telephone numbers accessed through any push-to-talk functions, as well as all received or missed incoming calls;

b.   Records, documents, programs, applications or materials, or evidence of the absence of same, sufficient to show SMS text, email communications or other text or written communications sent to or received from any of the digital devices and which relate to the above-named violations;

c.   Records, documents, programs, applications or materials, or evidence of the absence of same, sufficient to show instant and social media messages (such as Facebook, Facebook Messenger, Snapchat, FaceTime, Skype, and WhatsApp), SMS text, email communications, or other text or written communications sent to or received from any digital device and which relate to the above-named violations;

d.      Records, documents, programs, applications, materials, or conversations relating to the trafficking of drugs, including ledgers, pay/owe records, distribution or customer lists, correspondence, receipts, records, and documents noting price, quantities, and/or times when drugs were bought, sold, or otherwise distributed;

e.      Audio recordings, pictures, video recordings, or still captured images related to the purchase, sale, transportation, or distribution of drugs;

f.      Contents of any calendar or date book;

g.      Global Positioning System ("GPS") coordinates and other information or records identifying travel routes, destinations, origination points, and other locations; and

h.      Any SUBJECT DEVICE which is itself or which contains evidence, contraband, fruits, or instrumentalities of the Subject Offenses, and forensic copies thereof.

i.      With respect to any SUBJECT DEVICE containing evidence falling within the scope of the foregoing categories of items to be seized:

i.      evidence of who used, owned, or controlled the device at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, e-mail, e-mail contacts, chat and instant messaging logs, photographs, and correspondence;

ii.      evidence of the presence or absence of software that would allow others to control the device, such as

viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

   iii. evidence of the attachment of other devices;

   iv.  evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the device;

   v.  evidence of the times the device was used;

   vi.  passwords, encryption keys, and other access devices that may be necessary to access the device;

   vii. applications, utility programs, compilers, interpreters, or other software, as well as documentation and manuals, that may be necessary to access the device or to conduct a forensic examination of it;

   viii.    records of or information about Internet Protocol addresses used by the device;

   ix.  records of or information about the device's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

 2.  As used herein, the terms "records," "documents," "programs," "applications," and "materials" include records, documents, programs, applications, and materials created, modified, or stored in any form, including in digital form on any digital device and any forensic copies thereof.

## II.   SEARCH PROCEDURE FOR THE SUBJECT DEVICES

3.   In searching the SUBJECT DEVICES (or forensic copies *[which the SUBJECT DEVICES are not connected to the Internet or a network (such as in "airplane mode")]* thereof), law enforcement personnel executing this search warrant will employ the following procedure:

a.   Law enforcement personnel or other individuals assisting law enforcement personnel (the "search team") may search any SUBJECT DEVICES capable of being used to facilitate the above-listed violations or containing data falling within the scope of the items to be seized.

b.   The search team will, in its discretion, either search each SUBJECT DEVICE where it is currently located or transport it to an appropriate law enforcement laboratory or similar facility to be searched at that location.

c.   The search team shall complete the search of the SUBJECT DEVICES as soon as is practicable but not to exceed 120 days from the date of issuance of the warrant.  The government will not search the digital devices beyond this 120-day period without obtaining an extension of time order from the Court.

d.   The search team will conduct the search only by using search protocols specifically chosen to identify only the specific items to be seized under this warrant.

i.   The search team may subject all of the data contained in each SUBJECT DEVICE capable of containing any of the items to be seized to the search protocols to determine whether the SUBJECT DEVICE and any data thereon falls within the scope of the items to be seized.  The search team may also search for and attempt to recover deleted, "hidden," or

iv

encrypted data to determine, pursuant to the search protocols, whether the data falls within the scope of the items to be seized.

       ii.  The search team may use tools to exclude normal operating system files and standard third-party software that do not need to be searched.

       iii. The search team may use forensic examination and searching tools, such as "EnCase" and "FTK" (Forensic Tool Kit), which tools may use hashing and other sophisticated techniques.

       e.  If the search team, while searching a SUBJECT DEVICE, encounters immediately apparent contraband or other evidence of a crime outside the scope of the items to be seized, the team shall immediately discontinue its search of that SUBJECT DEVICE pending further order of the Court and shall make and retain notes detailing how the contraband or other evidence of a crime was encountered, including how it was immediately apparent contraband or evidence of a crime.

       f.  If the search determines that a SUBJECT DEVICE does not contain any data falling within the list of items to be seized, the government will, as soon as is practicable, return the SUBJECT DEVICE and delete or destroy all forensic copies thereof.

       g.  If the search determines that a SUBJECT DEVICE does contain data falling within the list of items to be seized, the government may make and retain copies of such data, and may access such data at any time.

h.   If the search determines that the SUBJECT DEVICE is (1) itself an item to be seized and/or (2) contains data falling within the list of other items to be seized, the government may retain the digital device and any forensic copies of the digital device, but may not access data falling outside the scope of the other items to be seized (after the time for searching the device has expired) absent further court order.

i.   The government may also retain a SUBJECT DEVICE if the government, prior to the end of the search period, obtains an order from the Court authorizing retention of the device (or while an application for such an order is pending), including in circumstances where the government has not been able to fully search a device because the device or files contained therein is/are encrypted.

j.   After the completion of the search of the SUBJECT DEVICES, the government shall not access digital data falling outside the scope of the items to be seized absent further order of the Court.

4.   During the execution of this search warrant, law enforcement is permitted to (1) depress any of the CIVIC OCCUPANTS' thumbs- and/or fingers onto the fingerprint sensor of the SUBJECT DEVICES (only if the device has such a sensor), and direct which specific finger(s) and/or thumb(s) shall be depressed; and (2) hold the device in front of CIVIC OCCUPANTS' faces with the CIVIC OCCUPANTS' eyes open to activate the facial-, iris-, or retina-recognition feature, in order to gain access to the contents of any such device.  In depressing a

*[handwritten annotations: "voluntarily"; "SARAI IMENTE – VALDEZ", "APRIL RODRIGUEZ", "SALVADOR GONZALEZ", "JUAN PABLO CONTRERAS"]*

vi

person's thumb or finger onto a device and in holding a device in front of a person's face, law enforcement may not use excessive force, as defined in Graham v. Connor, 490 U.S. 386 (1989); specifically, law enforcement may use no more than objectively reasonable force in light of the facts and circumstances confronting them.

5.   The special procedures relating to digital devices found in this warrant govern only the search of digital devices pursuant to the authority conferred by this warrant and do not apply to any search of digital devices pursuant to any other court order.

Signed Affidavit

## AFFIDAVIT

I, JOSEPH NAZARENO, being duly sworn, declare and state as
follows:

### I.  PURPOSE OF AFFIDAVIT

1.    This affidavit is also made in support of an
application for a warrant to search three digital devices
(collectively, the "SUBJECT DEVICES"), in the custody of the
Riverside County Sheriff's Office ("RSO") Perris Station, in
Perris, California, as described more fully in Attachment A.

2.    The requested search warrant seeks authorization to
seize evidence, fruits, or instrumentalities of violations of 21
U.S.C. §§ 841(a)(1) (possession with intent to distribute
controlled substances), 846 (conspiracy and attempt to
distribute controlled substances) and 843(b) (Use of
Communication Facility to Commit a Felony Controlled Substance
Offense) (the "Subject Offenses"), as described more fully in
Attachment B.  Attachments A and B are incorporated herein by
reference.

3.    The facts set forth in this affidavit are based upon
my personal observations, my training and experience, and
information obtained from various law enforcement personnel and
witnesses.  This affidavit is intended to show merely that there
is sufficient probable cause for the requested search warrant,
and does not purport to set forth all of my knowledge of or
investigation into this matter.  Unless specifically indicated
otherwise, all conversations and statements described in this
affidavit are related in substance and in part only.

## II. BACKGROUND OF AFFIANT

4.    I am a Criminal Investigator, Special Agent ("SA") with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), and have been so employed since January 2017. I am a law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), as such, I am empowered by law to conduct investigations and make arrests for the offenses enumerated within the United States Code.

5.    I have attended the ATF Special Agent Basic Training program at the Federal Law Enforcement Training Center (FLETC) in Glynco, Georgia, where I received training in federal laws and regulations. I regularly refer to these laws and regulations during the course of my duties, and have participated in investigations, and the execution of search and arrest warrants for violations of these statutes. Particularly, I have been the lead case agent in investigations involving drug trafficking, and in undercover operations wherein drugs were purchased.

6.    Prior to working for the ATF, I was employed as a United States Probation & Pretrial Services Officer in the Eastern District of Wisconsin (Milwaukee), for two years. In that capacity, I supervised individuals alleged to have committed federal crimes, and those convicted of violating federal law, including offenses related to firearms, controlled substances, financial fraud, and sexually based crimes. I also worked as a United States Probation Officer in the Western District of Tennessee (Memphis), for four years, as a presentence investigator and as a supervision officer. During

this time in Memphis, I also served as a certified Firearms Instructor, a Defensive Tactics Instructor, and a Search Enforcement Team Member.

7.    I have received a Bachelor of Arts degree in Psychology from the University of Dallas, and a Master of Arts degree in Forensic Psychology from the Chicago School of Professional Psychology. I am currently assigned to the ATF Riverside Field Office in Riverside, California. I am also a member of the Inland Empire Safe Streets Task Force ("SSTF"), also based in Riverside, California, which is comprised of agents/officers from the Federal Bureau of Investigation ("FBI"), Drug Enforcement Administration ("DEA"), Riverside County Sheriff's Office ("RSO") Major Crimes Unit ("MCU"), and the Riverside Police Department ("RPD").

### III. <u>SUMMARY OF PROBABLE CAUSE</u>

8.    On or about November 14, 2019, RSO deputies in Perris, California, were conducting patrol when they observed Sarai MEMIJE-VALDEZ, driving a black Honda Civic, fail to come to a full and complete stop at a stop sign at the intersection of 8th Street and D Street. Deputies conducted a traffic stop and ultimately searched the Civic.  Officers recovered approximately 464.4 grams of methamphetamine in the backseat of the Civic between Salvador GONZALEZ and Juan Pablo CONTRERAS. The methamphetamine was found inside a leopard-print backpack. One gallon-sized plastic bag contained approximately 448.95 grams, one smaller bag in the backpack contained approximately 14.25 grams, and one bag contained approximately 1.20 grams of

3

methamphetamine. Furthermore, during a search of GONZALEZ's person, deputies recovered approximately 31.60 grams of methamphetamine tucked in his buttocks, and approximately 0.35 grams of methamphetamine found in a bag in his front pocket. A presumptive test of the suspected methamphetamine seized confirmed the presence of methamphetamine. Deputies interviewed the occupants of the vehicle, MEMIJE-VALDEZ (driver), April RODRIGUEZ (front passenger), GONZALEZ (driver-side rear passenger), and CONTRERAS (passenger-side rear) (collectively the "CIVIC OCCUPANTS"). All four occupants denied knowledge and ownership of the methamphetamine found in the leopard-print backpack.

## IV. STATEMENT OF PROBABLE CAUSE

9.   Based on my review of law enforcement reports, conversations with other law enforcement agents, and my own knowledge of the investigation, I am aware of the following:

### A.   November 14, 2019 Traffic Stop

10.   On or about November 14, 2019, Deputies M. Buelna and M. Cook with the RSO Special Enforcement Team were on patrol in the City of Perris, California. At approximately 1:20 p.m., Deputy M. Buelna observed a black Honda Civic driving westbound on 8th Street, towards D Street, where the intersection is protected by a stop sign. The vehicle's driver failed to come to a full and complete stop in violation of California Vehicle Code 22450(a). The driver, later identified as Sarai MEMIJE-VALDEZ, turned the vehicle north onto D Street. After the violation,

deputies activated their emergency lights to conduct a traffic stop.

11.   MEMIJE-VALDEZ turned the Civic eastbound onto 7th Street and failed to stop at the posted stop sign. MEMIJE-VALDEZ continued to drive eastbound on 7th Street and began weaving her Civic within the lane. Deputies observed that the Civic was occupied by four occupants, and that MEMIJE-VALDEZ was checking her side-view mirror several times while deputies were attempting to stop the Civic. Furthermore, deputies observed that the rear passengers were ducking and moving around in the backseat. Based on their training and experience, deputies believes that the rear passengers were attempting to conceal contraband and/or weapons.

12.   Because MEMIJE-VALDEZ did not immediately stop, deputies utilized the public-address system from their patrol vehicle to order her to stop immediately. MEMIJE-VALDEZ turned northbound onto Perris Boulevard, and stopped facing north. Each occupant was subsequently detained in a separate patrol vehicle.

13.   The front passenger was identified as April RODRIGUEZ, the driverside rear passenger was identified as Salvador GONZALEZ, and the rear passenger was identified as Juan Pablo CONTRERAS. Deputies conducted law enforcement database inquires and confirmed that GONZALEZ and CONTRERAS were on parole. Deputies learned that RODRIGUEZ was on Post Community Release Supervision.

14.   RSO Deputy P. Salazar searched GONZALEZ's person and located a glass pipe with a bulbous end, and a white crystalline

substance wrapped in a plastic bindle in GONZALEZ' pants pocket. The pipe's interior was coated with a white substance, consistent with methamphetamine.

15.   Deputies M. Buelna, M. Cook, and P. Salazar searched the vehicle. Deputy P. Salazar located a leopard-print backpack in between the driver and passenger-side rear seat. The backpack contained a gallon-sized, Zip-Lock style bag that contained a large quantity of a white crystalline substance. Additionally, the backpack contained two small sandwich-sized plastic baggies that both contained a white crystalline substance.  Deputy M. Buelna located a digital scale on the floor in between the rear driver and passenger side seat, and an additional digital scale in the driver's-door storage pocket. The vehicle occupants were subsequently transported to the RSO Perris Station for further processing.

16.   During processing at RSO Perris Station, GONZALEZ told Deputy J. Wilmer that he had drugs concealed on his person, hidden in between his buttocks. GONZALEZ dislodged a bindle wrapped in black plastic and dropped it on the floor. The item was processed, and deputies determined that the black plastic baggie contained two smaller individually wrapped bindles of a white crystalline substance.

17.   The gallon-sized bag located in the leopard backpack weighed approximately 448.95 grams.  One smaller bag in the backpack weighed 14.25 grams, and the other weighed 1.20 grams. The bag located in GONZALEZ's pocket weighed 0.35 grams. The bindle concealed in GONZALEZ's buttocks weighed approximately

31.60 grams. Deputies field tested the substances using NARK II test kits. The results confirmed the presence of methamphetamine in all of the substances.

**B.   Seizure of the Subject Devices**

18.   At the time of the traffic stop, the SUBJECT DEVICES were seized. A silver Samsung, Model SM-J737P, IMEI no. 35425509950313, was found on the driver-side front seat where MEMIJI-VALDEZ was seated. A pink iPhone with black "Apple" icon, T-Mobile SIM Card no. 8901260182771498963, was found on the passenger-side front seat where RODRIGUEZ was seated, and a iPhone, Model 8-Plus, Serial no. DX5X67BTJCM2, with name "iPhone sal goza", was found on the driver-side rear seat where GONZALEZ was seated.

**C.   Statements**

19.   <u>Sarai MEMIJI-VALDEZ</u>

a.   On or about November 14, 2019, FBI Special Agent Keith MacCalla and I (hereinafter collectively referred to as "LEOs") interviewed MEMIJI-VALDEZ. At the onset of the interview, LEOs advised MEMIJI-VALDEZ of her <u>Miranda</u> rights. MEMIJI-VALDEZ verbalized her understanding and elected to speak. She reported that she was on her way to drop off April RODRIGUEZ, Salvador GONZALEZ, and Juan CONTRERAS, at the intersection of Fourth Street and D Street in Perris, California, after being asked by RODRIGUEZ for a ride. MEMIJI-VALDEZ admitted to not coming to a full stop at a stop sign.

b.   MEMIJI-VALDEZ denied any knowledge of the methamphetamine found in the backseat. MEMIJI-VALDEZ advised

that the leopard-print backpack the methamphetamine was found in did not belong to her. At the time of the interview, a silver Samsung, Model SM-J737P, IMEI no. 35425509950313, was presented to her, which she claimed belonged to her. MEMIJI-VALDEZ further reported that her phone number was "951-581-4191," and that the phone was next to her on the seat at the time of the traffic stop.

20.  April Kimberly RODRIGUEZ

　　a.　On or about November 14, 2019, LEOs interviewed RODRIGUEZ. At the onset of the interview, LEOs advised RODRIGUEZ of her Miranda rights. RODRIGUEZ verbalized her understanding and elected to speak. She denied any knowledge of the methamphetamine found in the vehicle. RODRIGUEZ advised that the driver of the vehicle, MEMIJI-VALDEZ, was her "cousin", and that GONZALEZ, the driver-side rear passenger, was her ex-boyfriend. When LEOs presented her with a pink iPhone with black "Apple" icon; T-Mobile SIM Card no. 8901260182771498963, she admitted that the phone belonged to her. When LEOs asked her if there was evidence of controlled substance trafficking contained in the phone, she stated there was not.

21.  Salvador GONZALEZ

　　a.　On or about November 14, 2019, LEOs interviewed GONZALEZ. At the onset of the interview, LEOs advised him of his Miranda rights. GONZALEZ verbalized his understanding and elected to speak. GONZALEZ reported that he knew he was subject to a warrant from parole. When questioned about whether he uses any controlled substances, GONZALEZ reported, "all of the

above," but his drug of choice is heroin, and he uses methamphetamine as a way to cope with the withdrawals from heroin. GONZALEZ further claimed to use approximately one ounce of methamphetamine per day.

b.  GONZALEZ denied any knowledge of ownership of the methamphetamine found in the backseat directly next to him in the vehicle. GONZALEZ admitted to being in possession of a small amount of methamphetamine in his pocket.  He denied knowing or having a relationship with any of the other individuals in the vehicle. He stated he was simply looking for a ride back to Fontana, California. GONZALEZ was presented with an iPhone, Model 8-Plus, Serial no. DX5X67BTJCM2, with name "iPhone sal goza," which he admitted belonged to him. When asked if the contents of his phone would show evidence of controlled substance distribution offenses, he stated it would not. GONZALEZ stated there may be evidence of him using controlled substances on the phone. When questioned about whether the phone would show evidence of him knowing any of the individuals in the vehicle, he declined to answer and stated, "I'm not gonna tell on myself."

## V.  TRAINING AND EXPERIENCE ON DRUG OFFENSES

22.  Based on my training and experience and familiarity with investigations into drug trafficking conducted by other law enforcement agents, I know the following:

a.  Drug trafficking is a business that involves numerous co-conspirators, from lower-level dealers to higher-level suppliers, as well as associates to process, package, and

deliver the drugs and launder the drug proceeds.  Drug
traffickers often travel by car, bus, train, or airplane, both
domestically and to foreign countries, in connection with their
illegal activities in order to meet with co-conspirators,
conduct drug transactions, and transport drugs or drug proceeds.

       b.   Drug traffickers often maintain books, receipts,
notes, ledgers, bank records, and other records relating to the
manufacture, transportation, ordering, sale and distribution of
illegal drugs.  The aforementioned records are often maintained
where the drug trafficker has ready access to them, such as on
their cell phones and other digital devices.

       c.   Communications between people buying and selling
drugs take place by telephone calls and messages, such as e-
mail, text messages, and social media messaging applications,
sent to and from cell phones and other digital devices.  This
includes sending photos or videos of the drugs between the
seller and the buyer, the negotiation of price, and discussion
of whether or not participants will bring weapons to a deal.  In
addition, it is common for people engaged in drug trafficking to
have photos and videos on their cell phones of drugs they or
others working with them possess, as they frequently send these
photos to each other and others to boast about the drugs or
facilitate drug sales.

       d.   Drug traffickers often keep the names, addresses,
and telephone numbers of their drug trafficking associates on
their digital devices.  Drug traffickers often keep records of
meetings with associates, customers, and suppliers on their

digital devices, including in the form of calendar entries and
location data.

     e.   Individuals engaged in the illegal purchase or
sale of drugs and other contraband often use multiple digital
devices.

## TRAINING AND EXPERIENCE ON DIGITAL DEVICES

23.  As used herein, the term "digital device" includes the
SUBJECT DEVICES.

24.  Based on my training, experience, and information from
those involved in the forensic examination of digital devices, I
know that the following electronic evidence, inter alia, is
often retrievable from digital devices:

     a.   Forensic methods may uncover electronic files or
remnants of such files months or even years after the files have
been downloaded, deleted, or viewed via the Internet.  Normally,
when a person deletes a file on a computer, the data contained
in the file does not disappear; rather, the data remain on the
hard drive until overwritten by new data, which may only occur
after a long period of time.  Similarly, files viewed on the
Internet are often automatically downloaded into a temporary
directory or cache that are only overwritten as they are
replaced with more recently downloaded or viewed content and may
also be recoverable months or years later.

     b.   Digital devices often contain electronic evidence
related to a crime, the device's user, or the existence of
evidence in other locations, such as, how the device has been
used, what it has been used for, who has used it, and who has

been responsible for creating or maintaining records, documents, programs, applications, and materials on the device. That evidence is often stored in logs and other artifacts that are not kept in places where the user stores files, and in places where the user may be unaware of them. For example, recoverable data can include evidence of deleted or edited files; recently used tasks and processes; online nicknames and passwords in the form of configuration data stored by browser, e-mail, and chat programs; attachment of other devices; times the device was in use; and file creation dates and sequence.

        c.   The absence of data on a digital device may be evidence of how the device was used, what it was used for, and who used it. For example, showing the absence of certain software on a device may be necessary to rebut a claim that the device was being controlled remotely by such software.

        d.   Digital device users can also attempt to conceal data by using encryption, steganography, or by using misleading filenames and extensions. Digital devices may also contain "booby traps" that destroy or alter data if certain procedures are not scrupulously followed. Law enforcement continuously develops and acquires new methods of decryption, even for devices or data that cannot currently be decrypted.

    25.  Based on my training, experience, and information from those involved in the forensic examination of digital devices, I know that it is not always possible to search devices for data in a short period of time for a number of reasons, including the following:

a.   Digital data are particularly vulnerable to inadvertent or intentional modification or destruction.   Thus, often a controlled environment with specially trained personnel may be necessary to maintain the integrity of and to conduct a complete and accurate analysis of data on digital devices, which may take substantial time, particularly as to the categories of electronic evidence referenced above.

b.   Digital devices capable of storing multiple gigabytes are now commonplace.   As an example of the amount of data this equates to, one gigabyte can store close to 19,000 average file size (300kb) Word documents, or 614 photos with an average size of 1.5MB.

c.   In addition, several factors may affect the length of the review, e.g., (1) there are three cellular phones which will be forensically cloned; (2) based on previous investigations, it is known that wiping or remotely deleting the contents of a cellular phone is a risk; (3) there may be language issues that might complicate review, i.e. Spanish.

26.   The search warrant requests authorization to use the biometric unlock features of a device, based on the following, which I know from my training, experience, and review of publicly available materials:

a.   Users may enable a biometric unlock function on some digital devices.   To use this function, a user generally displays a physical feature, such as a fingerprint, face, or eye, and the device will automatically unlock if that physical feature matches one the user has stored on the device.   To

unlock a device enabled with a fingerprint unlock function, a user places one or more of the user's fingers on a device's fingerprint scanner for approximately one second. To unlock a device enabled with a facial, retina, or iris recognition function, the user holds the device in front of the user's face with the user's eyes open for approximately one second.

      b.   In some circumstances, a biometric unlock function will not unlock a device even if enabled, such as when a device has been restarted or inactive, has not been unlocked for a certain period of time (often 48 hours or less), or after a certain number of unsuccessful unlock attempts. Thus, the opportunity to use a biometric unlock function even on an enabled device may exist for only a short time. I do not know the passcodes of the devices likely to be found in the search.

      c.   The person who is in possession of a device or has the device among his or her belongings is likely a user of the device. Thus, the warrant I am applying for would permit law enforcement personnel to, with respect to any device that appears to have a biometric sensor and falls within the scope of the warrant: (1) depress the any of the CIVIC OCCUPANTS' thumbs- and/or fingers on the device(s); and (2) hold the device(s) in front of any of the CIVIC OCCUPANTS' faces with their eyes open to activate the facial-, iris-, and/or retina-recognition feature.

## VI. CONCLUSION

27.   For all of the reasons described above, there is probable cause that the items to be seized described in Attachment B will be found in a search of the SUBJECT DEVICES described in Attachment A

/S/
JOSEPH NAZARENO, Special Agent
Bureau of Alcohol, Tobacco,
Firearms and Explosives

Subscribed to and sworn before me
this 27TH day of NOVEMBER, 2019.

UNITED STATES MAGISTRATE JUDGE
SHASHI H. KEWALRAMANI

**ATTACHMENT A**

PROPERTY TO BE SEARCHED

The following digital devices (the "SUBJECT DEVICES"), seized on November 14, 2019, and currently maintained in the custody of the Riverside County Sheriff's Office in Perris, California:

1.    One (1) silver Samsung, Model SM-J737P, IMEI no. 35425509950313, with phone no. 951-581-4191;

2.    One (1) iPhone, Model 8-Plus, Serial no. DX5X67BTJCM2, with name "iPhone sal goza";

3.    One (1) pink iPhone with black "Apple" icon; T-Mobile SIM Card no. 8901260182771498963.

## ATTACHMENT B

### I.   ITEMS TO BE SEIZED

1.   The items to be seized are evidence, contraband, fruits, or instrumentalities of violations of 21 U.S.C. §§ 841(a)(1) (possession with intent to distribute controlled substances), §846 (conspiracy and attempt to distribute controlled substances) and 843(b) (Use of Communication Facility to Commit a Felony Controlled Substance Offense) (the "Subject Offenses"), namely:

   a.   Records, documents, programs, applications and materials, or evidence of the absence of same, sufficient to show call log information, including all telephone numbers dialed from any of the digital devices and all telephone numbers accessed through any push-to-talk functions, as well as all received or missed incoming calls;

   b.   Records, documents, programs, applications or materials, or evidence of the absence of same, sufficient to show SMS text, email communications or other text or written communications sent to or received from any of the digital devices and which relate to the above-named violations;

   c.   Records, documents, programs, applications or materials, or evidence of the absence of same, sufficient to show instant and social media messages (such as Facebook, Facebook Messenger, Snapchat, FaceTime, Skype, and WhatsApp), SMS text, email communications, or other text or written communications sent to or received from any digital device and which relate to the above-named violations;

i

d.    Records, documents, programs, applications, materials, or conversations relating to the trafficking of drugs, including ledgers, pay/owe records, distribution or customer lists, correspondence, receipts, records, and documents noting price, quantities, and/or times when drugs were bought, sold, or otherwise distributed;

e.    Audio recordings, pictures, video recordings, or still captured images related to the purchase, sale, transportation, or distribution of drugs;

f.    Contents of any calendar or date book;

g.    Global Positioning System ("GPS") coordinates and other information or records identifying travel routes, destinations, origination points, and other locations; and

h.    Any SUBJECT DEVICE which is itself or which contains evidence, contraband, fruits, or instrumentalities of the Subject Offenses, and forensic copies thereof.

i.    With respect to any SUBJECT DEVICE containing evidence falling within the scope of the foregoing categories of items to be seized:

i.    evidence of who used, owned, or controlled the device at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, e-mail, e-mail contacts, chat and instant messaging logs, photographs, and correspondence;

ii.   evidence of the presence or absence of software that would allow others to control the device, such as

ii

viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

        iii. evidence of the attachment of other devices;

        iv.  evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the device;

        v.   evidence of the times the device was used;

        vi.  passwords, encryption keys, and other access devices that may be necessary to access the device;

        vii. applications, utility programs, compilers, interpreters, or other software, as well as documentation and manuals, that may be necessary to access the device or to conduct a forensic examination of it;

        viii.    records of or information about Internet Protocol addresses used by the device;

        ix.  records of or information about the device's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

    2.  As used herein, the terms "records," "documents," "programs," "applications," and "materials" include records, documents, programs, applications, and materials created, modified, or stored in any form, including in digital form on any digital device and any forensic copies thereof.

## II.  SEARCH PROCEDURE FOR THE SUBJECT DEVICES

3.   In searching the SUBJECT DEVICES (or forensic copies thereof), law enforcement personnel executing this search warrant will employ the following procedure:

a.   Law enforcement personnel or other individuals assisting law enforcement personnel (the "search team") may search any SUBJECT DEVICES capable of being used to facilitate the above-listed violations or containing data falling within the scope of the items to be seized.

b.   The search team will, in its discretion, either search each SUBJECT DEVICE where it is currently located or transport it to an appropriate law enforcement laboratory or similar facility to be searched at that location.

c.   The search team shall complete the search of the SUBJECT DEVICES as soon as is practicable but not to exceed 120 days from the date of issuance of the warrant.  The government will not search the digital devices beyond this 120-day period without obtaining an extension of time order from the Court.

d.   The search team will conduct the search only by using search protocols specifically chosen to identify only the specific items to be seized under this warrant.

i.   The search team may subject all of the data contained in each SUBJECT DEVICE capable of containing any of the items to be seized to the search protocols to determine whether the SUBJECT DEVICE and any data thereon falls within the scope of the items to be seized.  The search team may also search for and attempt to recover deleted, "hidden," or

encrypted data to determine, pursuant to the search protocols, whether the data falls within the scope of the items to be seized.

      ii.  The search team may use tools to exclude normal operating system files and standard third-party software that do not need to be searched.

      iii. The search team may use forensic examination and searching tools, such as "EnCase" and "FTK" (Forensic Tool Kit), which tools may use hashing and other sophisticated techniques.

      e.  If the search team, while searching a SUBJECT DEVICE, encounters immediately apparent contraband or other evidence of a crime outside the scope of the items to be seized, the team shall immediately discontinue its search of that SUBJECT DEVICE pending further order of the Court and shall make and retain notes detailing how the contraband or other evidence of a crime was encountered, including how it was immediately apparent contraband or evidence of a crime.

      f.  If the search determines that a SUBJECT DEVICE does not contain any data falling within the list of items to be seized, the government will, as soon as is practicable, return the SUBJECT DEVICE and delete or destroy all forensic copies thereof.

      g.  If the search determines that a SUBJECT DEVICE does contain data falling within the list of items to be seized, the government may make and retain copies of such data, and may access such data at any time.

h.    If the search determines that the SUBJECT DEVICE is (1) itself an item to be seized and/or (2) contains data falling within the list of other items to be seized, the government may retain the digital device and any forensic copies of the digital device, but may not access data falling outside the scope of the other items to be seized (after the time for searching the device has expired) absent further court order.

i.    The government may also retain a SUBJECT DEVICE if the government, prior to the end of the search period, obtains an order from the Court authorizing retention of the device (or while an application for such an order is pending), including in circumstances where the government has not been able to fully search a device because the device or files contained therein is/are encrypted.

j.    After the completion of the search of the SUBJECT DEVICES, the government shall not access digital data falling outside the scope of the items to be seized absent further order of the Court.

4.    During the execution of this search warrant, law enforcement is permitted to (1) depress any of the CIVIC OCCUPANTS' thumbs- and/or fingers onto the fingerprint sensor of the SUBJECT DEVICES (only if the device has such a sensor), and direct which specific finger(s) and/or thumb(s) shall be depressed; and (2) hold the device in front of CIVIC OCCUPANTS' faces with the CIVIC OCCUPANTS' eyes open to activate the facial-, iris-, or retina-recognition feature, in order to gain access to the contents of any such device.  In depressing a

person's thumb or finger onto a device and in holding a device in front of a person's face, law enforcement may not use excessive force, as defined in Graham v. Connor, 490 U.S. 386 (1989); specifically, law enforcement may use no more than objectively reasonable force in light of the facts and circumstances confronting them.

5.     The special procedures relating to digital devices found in this warrant govern only the search of digital devices pursuant to the authority conferred by this warrant and do not apply to any search of digital devices pursuant to any other court order.